**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
ENNIS JOHNSON, SHARON JOHNSON,

        Plaintiffs,

        -against-

JAY LEVY, DIANE LEVY, SUE CAMPBELL,
51 SMITH STREET L.L.C. its members,
managers, and/or assigned, agent or otherwise in
his/her official and individual capacity,

        Defendants.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
10-CV-3217 (ADS)(ETB)

**APPEARANCES:**

**Law Offices of Frederick K. Brewington**
*Attorneys for the plaintiffs*
556 Peninsula Blvd.
Hempstead, NY 11550
    By:  Frederick K. Brewington, Esq.
        Marjorie Mesidor, Esq., Of Counsel

**Kardisch, Link & Associates, P.C.**
*Attorneys for the defendants*
53 N. Park Avenue, Suite 201
Rockville Centre, NY 11570
    By:  Josh H. Kardisch, Esq., Of Counsel

**SPATT, District Judge**.

    Plaintiffs Ennis Johnson and Sharon Johnson ("the Plaintiffs") commenced this action on

July 14, 2010 against 51 Smith Street L.L.C., Jay Levy, Diane Levy, and Sue Campbell, all of

whom are alleged to be either owners or employees of 51 Smith Street L.L.C. (collectively "the

Defendants"), asserting violations of the Fair Housing Amendments Act ("FHA"), 42 U.S.C. §§

3604(f) and 3617, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 ; Section

504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794; and the New

York State Human Rights Law ("NYHRL"), in addition to various state law claims.  Presently

1

before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be

granted.  For the reasons set forth below, the Defendants' motion is granted.

## I.  BACKGROUND

### A.  Factual Background

The following facts are drawn from the complaint and are construed in the light most

favorable to the Plaintiffs.

Plaintiff Ennis Johnson ("Ennis") is an African-American male who is currently and was

at all relevant times HIV-positive.  In addition, at all relevant times, Ennis received public

assistance from the Department of Social Services ("DSS") in the areas of medical and food

services and housing accommodations, and also received Social Security Income ("SSI").

Plaintiff Sharon Johnson ("Sharon") is a Caucasian female and Ennis Johnson's wife.  The

Johnsons are both residents of Suffolk County in the State of New York.

Defendant 51 Smith Street L.L.C. is a New York limited liability company with its

principal offices located in Nassau County, and which, during all relevant times, either owned, in

whole or in part, and/or operated an apartment building located at 51 Smith Street, Merrick, New

York ("51 Smith Street apartment building").  Defendant Jay Levy ("Levy") at all relevant times

held an ownership interest in 51 Smith Street L.L.C. and was an owner and/or the property

manager of the 51 Smith Street apartment building.   According to the Plaintiffs, at all relevant

times, defendant Diane Levy, Jay Levy's wife, held an ownership interest in 51 Smith Street

L.L.C.,  and defendant Sue Campbell was either employed by or a representative of one or all of

the other defendants—i.e., Jay Levy, Diane Levy and 51 Smith Street L.L.C.

2

In or about November 2008, the Johnson's then current apartment experienced a fire, rendering them homeless.  As a result, in January 2009, the Johnson's moved into the Gateway Hotel while they looked for a new apartment.  On or about January 14, 2009, the Johnsons saw an advertisement in Newsday for one bedroom luxury apartments available for rent at the 51 Smith Street apartment building.  Sharon called the number listed on the advertisement and spoke with Levy about her interest in renting one of the advertised one-bedroom apartments.  At this time, Sharon informed Levy that Ennis was recipient of DSS and SSI governmental public assistance and that they were in need of immediate housing.  Levy informed Sharon that there were two apartments available, Unit B-2, at a rental price of $1375 per month, and Unit C-3, which was $1,275 per month.  Sharon made an appointment to see both units later that afternoon.  After viewing the two units Sharon informed Levy that she was interested in Unit B-2.  As required for DSS and SSI recipients, on January 15, 2009, Levy prepared and provided the Johnsons with an offer letter for Unit B-2 setting forth the conditions for leasing the apartment (the "initial offer letter").  The letter stated:

> This is to confirm that I will provide you one-year lease for apartment B2 at 51 Smith Street, Merrick, NY at the monthly rental of $1375.  The conditions are two months security and the first month's rent must be paid at the lease signing and the rent must be guaranteed by a governmental agency.

(Compl., ¶ 33.)

According to the Johnsons, after receiving the initial offer letter, a DSS caseworker identified as "Mrs. Pearson", contacted Levy and informed him that Ennis only qualified for $1,275 per month in DSS rental payments and therefore the Johnsons would only qualify for DSS funding for Unit C-3.  Thus, Levy revised by hand the initial offer letter to reflect the same conditions, but for the rental of Unit C-3 (the "amended offer letter").  Subsequently, DSS

requested a typed version, which Levy provided on January 27, 2009 (the "Offer Letter" and

together with the initial offer letter and the amended offer letter, the "Offer Letters").  The

January 27, 2009 letter provided:

> This is to confirm that I will provide you one-year lease for
> apartment C-3 at 51 Smith Street, Merrick, NY at the monthly
> rental of $1275.  The conditions are two months security and the
> first month's rent must be paid at the lease signing and the rent
> must be guaranteed by a governmental agency.

(Compl., ¶ 41.)

That same day, after receiving the Offer Letter, DSS, consistent with their general

practice and with the knowledge and consent of Levy, performed a health and safety inspection

of Unit C-3 and approved the apartment as inhabitable.  This approval allowed the Johnsons to

qualify for rent payments from DSS and continue with the leasing process.

On February 5, 2009, Sharon met with one of Levy's employees, defendant Sue

Campbell ("Campbell"), at the DSS offices in Hempstead in order to acquire "a DSS rental

guarantee letter and/or its equivalent" (the "Rent Guarantee").  (Compl., ¶ 55.)  As defined in the

complaint, the Rent Guarantee "indicate[d] all amounts DSS w[ould] pay for the security deposit

and subsequent rental payments guaranteed by its agency".  (Compl., ¶ 56.)  According to the

Johnsons, the Rent Guarantee was the requisite guarantee of rent "by a government agency"

required in the Offer Letter.

In order for DSS to process the payment request, Sharon needed to get the Rent

Guarantee notarized.  For reasons not specified in the complaint, Campbell drove Sharon to find

a local Notary public.  According to Sharon, during the course of this drive, she informed

Campbell that her husband Ennis was HIV-positive.  Sharon claims that immediately after she

revealed this information, she overheard Campbell call Levy and tell him that Ennis was HIV-

4

positive.  Thereafter, at a time unspecified in the complaint, Levy directly, or Campbell on behalf of Levy, allegedly conveyed to Ennis and Sharon "that he would not rent to anyone who was HIV positive because children and elderly persons resided at the apartment building located at 51 Smith Street, Merrick, New York".  (Compl., ¶¶ 63 & 64.)   Levy did not provide the Johnsons with a written notice indicating the reasons for denying the apartment to them.  However, after "numerous verbal requests", again, at an unspecified time, Levy allegedly told the Johnsons that he denied their application to lease Unit C-3 because Ennis had misrepresented his employment status.  (Compl., ¶¶ 68 & 69.)

The Johnsons then contacted Nassau Suffolk Law Services, Inc. ("NSLS").  On February 10, 2009, attorney Robert Halpern of NSLS ("Halpern"), contacted Levy on the Johnson's behalf to discuss the denial of the Johnson's application.  According to the Johnsons, when Halpern asked Levy why he had denied their apartment application, Levy allegedly replied "[Ennis] has AIDS . . . I can't have that in my building".  (Compl., ¶ 72.)  Based on his belief that Levy had discriminated against him, and that housing discrimination was a matter of public concern, Ennis expressed his version of the above-stated facts to various news outlets.

As a result, on February 18, 2009, Levy commenced an action against the Johnsons, Halpern, and various media outlets in New York State Supreme Court, Nassau County for defamation, among other causes of action ("the Defamation Action").  See Levy v. Johnson, No, 2851/09 (N.Y. Sup. Ct., Nassau Cnty).  On July 14, 2009, the Johnsons commenced the instant action against Jay and Diane Levy, Sue Campbell, and 51 Smith Street, L.L.C. asserting sixteen causes of action for violations of federal and state statutes as well as state common law based on alleged housing discrimination and the subsequent Defamation Action.

**B.  The Instant Motion**

On September 30, 2010, the Defendants collectively moved to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) "or for other relief".  In opposition, the Johnsons voluntarily dismissed Counts VII, VIII, XI, XII, XIII, XIV, XV, and XVI and therefore the Court deems them withdrawn.  In addition, because Counts VII and XVI were the only causes of action asserted against Sue Campbell, the Court deems the complaint voluntarily dismissed as to Sue Campbell.

Moreover, for the purposes of clarity and consistency, the Court deems it prudent to clarify certain mislabeled causes of action in the complaint.  First, Count V of the complaint alleges housing discrimination in violation of 42 U.S.C. § 3604 of the FHA generally, without specifying the applicable subsection.  Because the cause of action alleges housing discrimination based on disability the Court treats it as a cause of action under section 3604(f)(1).  Next, the Court notes that the Plaintiffs labeled Count II as a violation of Title II of the ADA, despite the fact that the applicable statute, 42 U.S.C. § 12182, falls under Title III of the ADA.  Accordingly, the Court will refer to this cause of action as one pursuant to Title III.

Finally, as the Plaintiffs themselves concede, the complaint misstates:  (1) the applicable NYHRL housing discrimination provision in Count VI as section 296(a), when it should be section 296(2-a), and (2) the applicable provision for the alleged violation of the New York Anti-SLAPP statute in Count IX as New York Executive Law § 70-a, when it should be New York Civil Rights Law §§ 70-a and 76-a.  The Defendants addressed Count IX under the correct statute, and the elements of the NYHRL claim are similar to the elements of the federal housing discrimination claims so that the Court finds that the modifications do not prejudice the Defendants.

6

Thus, the remaining causes of action subject to the instant motion allege:  (1) Levy and

51 Smith Street L.L.C. are liable for housing discrimination based on disability in violation of

the Fair Housing Amendments Act, 42 U.S.C. §§ 3604(f)(2)(a), 3604(f)(1), & 3617; Title III of

the ADA, 42 U.S.C. § 12182; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the

NYHRL, N.Y. Exec. Law § 296(2-a); (2) Levy and 51 Smith Street L.L.C. violated the New

York State Anti-SLAPP statute, N.Y. Civil Rights Law §§ 70-a & 76-a by commencing the

Defamation Action; and (3) Levy is liable for breach of contract.

## II.  DISCUSSION

### A.  Legal Standard for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

Under the now well-established Twombly standard, a complaint should be dismissed only if

it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929

(2007).  The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule

12(b)(6) is guided by two principles.  Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft

v. Iqbal, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,'

that 'tenet' 'is in applicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice.' " Id. (quoting Iqbal,

129 S. Ct. at 1929).  "'Second, only a complaint that states a plausible claim for relief survives a

motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will

… be a context specific task that requires the reviewing court to draw on its judicial experience

and common sense.' " Id. (quoting Iqbal, 129 S. Ct. at 1950).  Thus, "[w]hen there are well-

pleaded factual allegations, a court should assume their veracity and … determine whether they plausibly give rise to an entitlement of relief."  Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor.  Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir.2007).  Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Hertz Corp. V. City of New York, 1 F.3d 121, 125 (2d Cir. 1993).  The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L. Ed 90 (1974)).

## B.  As to the Admissibility of Extrinsic Documents on a Rule 12(b)(6) Motion to Dismiss

In support of their motion to dismiss "and for other relief", the Defendants attached the following documents to their submissions:  (1) excerpts from the depositions of Ennis Johnson, Sharon Johnson, and Jay Levy in the Defamation Action; (2) affidavits by Jay Levy, Diane Levy, and Sue Campbell; (3) copies of the Offer Letters; (4) the 51 Smith Street L.L.C. Operating Agreement; and (5) the Johnsons' Credit Report.  The Plaintiffs contend that consideration of these extrinsic documents is improper on a Rule 12(b)(6) motion to dismiss.  With the exception of the Offer Letters, which the Court finds to be incorporated by reference and integral to the complaint, the Court agrees.

"Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion:  the court may exclude the additional material and

decide the motion on the complaint alone or it may convert the motion to one for summary judgment . . . ." Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991) (quoting Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988)) (internal quotation marks omitted); see also Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999) ("[T]he conversion requirement helps ensure that courts will refrain from engaging in fact-finding when considering a motion to dismiss, and also that [parties] are given a fair chance to contest . . . evidentiary assertions . . . ."). Despite the Defendants vague request for "other relief", the Court declines to convert the Defendants' motion into one for summary judgment.

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999). In addition, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

There is no basis for the Court to consider the affidavits of Jay Levy, Diane Levy, and Sue Campbell, the 51 Smith Street L.L.C. Operating Agreement, or the Johnsons' Credit Report, which are attached solely for the purpose of refuting the facts alleged in the complaint and would require credibility assessments and weighing of the evidence, which is not appropriate on a motion to dismiss. See Elmowitz v. Executive Towers at Lido, LLC, 571 F. Supp. 2d 370, 375 n. 4 (E.D.N.Y. 2008) (declining to consider exhibits submitted in conjunction with a motion to

dismiss on a housing discrimination claim).  With regard to the deposition transcripts, the Defendants make a number of arguments for their admissibility, none of which are compelling.

First, the Defendants contend that because the Johnsons were deposed under oath, subject to cross-examination, and declined to submit an errata sheet or affidavit correcting any statements made during the deposition, the Court can consider the statements in their depositions as admissions.  However, all of the cases cited by the Defendants for this proposition, namely United States v. Pfingst, 477 F.2d 177 (2d Cir. 1973); United States v. De Sisto, 329 F.2d 929 (2d Cir. 1964); United States v. Nuccio, 373 F.2d 168 (2d Cir. 1967); and United States v. Gonzalez-Carta, 419 F.2d 548 (2d Cir. 1969), are distinguishable because they involved the admissibility of prior testimony at trial, not on a motion to dismiss.  The Defendants also argue that the Court can take judicial notice of the deposition transcripts as part of the public record in the Defamation Action.

On a motion to dismiss, the court may "consider matters of which judicial notice may be taken" under Federal Rules of Evidence 201 ("Rule 201").  Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). Rule 201(b) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Civ. P. 201(b).  "Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions."  Schenk v. Citibank/Citigroup/Citicorp, No. 10-CV-5056, 2010 WL 5094360, at *2 (S.D.N.Y. Dec. 9, 2010); Anderson v. Rochester-Genesee Regional Transp. Auth., 337 F.3d 201, 205 (2d Cir. 2003) (taking judicial notice of a district court opinion that was not submitted as part of the record on appeal); Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir.

2000) (taking judicial notice of a complaint filed in another action).  However, when courts take judicial notice of documents filed in other courts, it is "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  Kramer, 937 F.2d at 774; Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., 146 F.3d 66, 70 (2d Cir. 1998).

Here, the Defendants contend that the Court can and should take judicial notice of the deposition transcripts because they constitute verified and sworn testimony, which is more reliable than the facts in an unverified initial complaint.  The argument that a court can rely on previous testimony on a motion to dismiss for the purpose of contradicting facts asserted in the complaint was explicitly rejected by the Second Circuit in Global Network Communications, Inc. v. City of New York, 458 F.3d 150 (2d Cir. 2006).  In Global Network, the court reversed a district court's dismissal of a complaint for failure to state a claim because the court relied in part on the testimony of the plaintiff's sole shareholder and president in an unrelated criminal proceeding.  The Second Circuit found this to be reversible error because "not only did the district court consider external material in its ruling, it relied on those materials to make a finding of fact that *controverted* the plaintiff's own factual assertions set out in its complaint."  458 F.3d at 156 (emphasis in original).

Thus, not only would it be reversible error for the Court to consider the deposition transcripts for the truth of the matter asserted, but it would be improper for the Court on a motion to dismiss to accept the statements in the deposition transcripts over the facts asserted in the complaint. See Iannuzzi v. Washington Mut. Bank, No. 07-CV-964, 2008 WL 3978189, at *6 n.2 (E.D.N.Y. Aug. 21, 2008) (holding that on a 12(c) motion to dismiss, the court "cannot consider matters outside the pleadings, such as a deposition transcript [from another action]" and

therefore disregarding any references to the transcript that were outside the scope of the pleadings).

Finally, the Defendants contend that the Court can consider the Offer Letters because they were incorporated by reference and are integral to the complaint.  The Court agrees.

"To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents .... [and] [t]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." DeLuca v. AccessIT Group, Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks, citations, and alterations omitted); see Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).  It is true that "limited references are insufficient to incorporate documents or exhibits into the complaint".  Sahu v. Union Carbide Corp., 548 F.3d 59, 67–68 (2d Cir. 2008); Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

However, the Plaintiffs did not selectively quote from the Offer Letters in the complaint. Rather, they included the text of these letters in their entirety.  In opposition to the instant motion, the Plaintiffs do not argue that the Offer Letters submitted by the Defendants are in any way incomplete or invalid.  To the contrary, the Plaintiffs admit that the language in the Offer Letters "mirror[] the language plead in the Complaint".  (Pls.' Opp at 9.)  Furthermore, the Plaintiffs claims are directly premised on the text of the Offer Letters and therefore the Offer Letters are integral to the complaint.  As discussed in detail below the Plaintiffs allege that they were qualified to rent the apartment because they met the conditions set forth in the Offer Letters.  Furthermore, the Plaintiffs breach of contract cause of action is based on a verbal agreement, "the terms of which" were set forth in the offer letter.  See Verzani v. Costco

Wholesale Corp., 641 F. Supp. 2d 291, 297–98 (S.D.N.Y. 2009) ("[W]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim.").

Thus, the Court finds that the Offer Letters are incorporated by reference and integral to the complaint, and therefore, contrary to the Plaintiffs' contention, can be considered by the Court without converting the motion into one for summary judgment.  See Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005) (documents incorporated by reference may be considered on a motion to dismiss without triggering conversion).

**C.  As to the Motion to Dismiss the Complaint against Diane Levy**

The Defendants note, and the Plaintiffs concede, that the complaint does not identify any specific acts of misconduct by Diane Levy.  The sole allegation in the complaint against Diane Levy states:  "DEFENDANT DIANE LEVY wife of DEFENDANT JAY LEVY, holds an ownership interest and/or controlling interest in 51 SMITH STREET LLC and/or 51 Smith Street, Merrick, New York, Nassau County, during all times relevant herein".  (Compl., ¶ 11.) The Defendants contend that the Plaintiffs have failed to state a claim against Diane Levy because, as reflected in the copy of the 51 Smith Street L.L.C. Operating Agreement and the Affidavit of Diane Levy, she does not have an ownership interest in 51 Smith Street L.L.C.  For their part, the Plaintiffs contend that the operating agreement and affidavit are inadmissible on a motion to dismiss and that they are entitled to develop during discovery Diane Levy's role, if any, in the ownership and control of 51 Smith Street L.L.C.

Although, as previously noted, the Court agrees that it is improper for the Court to consider the 51 Smith Street L.L.C. Operating Agreement and Affidavit of Diane Levy on a motion to dismiss, the Court nevertheless finds that dismissal of Diane Levy is warranted.  The complaint

does not allege any individual misconduct by Diane Levy, nor do the Plaintiffs assert any causes of action against Diane Levy.  To the extent the Plaintiffs seek to pierce the corporate veil, they have not alleged any facts from which the Court can infer that:  (1) Diane Levy exercised complete domination over 51 Smith Street L.L.C. with respect to the rental transaction at issue; and (2) "that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  See Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141, 82 N.Y.2d 135, 623 N.E.2d 1157 (1993) (collecting cases).  Accordingly, the Court grants the Defendants motion to dismiss the complaint as against Diane Levy.   As a result of this dismissal and the previously mentioned dismissal of Sue Campbell, all subsequent references to "the Defendants" will refer only to 51 Smith Street L.L.C. and Jay Levy.

**D.  As to the Housing Discrimination Claims (Counts I through VI)**

The Plaintiffs allege that the Defendants discriminated against them based on the fact that Ennis Johnson is HIV-positive in violation of the following statutes:  (1) the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. §§ 3604(f)(1), 3604(f)(2)(a), and 3617; (2) Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182; (3) Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; and (4) New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296(2-a).  Before addressing the substance of the Defendants' motion, the Court notes that the Plaintiffs appear to have misread the Defendants' motion to dismiss Counts I through V as one to dismiss Counts I and V.  Thus, the Plaintiffs did not directly oppose the motion to dismiss their claims under section 3617 of the FHA, Title III of the ADA, or the Rehabilitation Act.  However, because, as discussed below, the Defendants' motion is premised on the Plaintiffs failure to plead an element common to all of the housing discrimination claims, this misunderstanding has no bearing on the Court's decision.

14

The FHA makes it illegal to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap", 42 U.S.C. § 3604(f)(1), and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . . because of a handicap", 42 U.S.C. § 3604(f)(2).  To establish a prima facie case of discrimination under section 3604(f), a plaintiff must allege that:  (1) he is a member of a protected class; (2) he sought and was qualified to rent or purchase the housing; (3) he was rejected, and (4) the housing opportunity remained available to other renters or purchasers.  Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) (citing Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032, 1038 (2d Cir. 1979)); Elmowitz v. Executive Towers at Lido, LLC., 571 F. Supp. 2d 370, 375 (E.D.N.Y. 2008).  These same elements are applicable to claims for housing discrimination based on disability under NYHRL § 296(2-a), which similarly makes it unlawful"[t]o refuse to sell, rent or lease or otherwise to deny to or withhold from any person or group of persons such housing accommodations because of . . . disability . . . of such person or persons, or to represent that any housing accommodation or land is not available for inspection, sale, rental or lease when in fact it is so available".  N.Y. Exec. Law § 296(2-a); Echeverria v. Krystie Manor, LP, No. 07-CV-1369, 2009 WL 857629, at *9 (E.D.N.Y. Mar. 30, 2009) ("The elements of a claim under the NYHRL are the same as under the Fair Housing Act.").

The FHA also makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section [3604.]"  42 U.S.C. § 3617.  To establish an FHA claim under section 3617, a plaintiff must show (1) he exercised or aided or encouraged a protected individual in exercising their rights under the FHA and (2) as a result of his actions, he suffered

coercion, intimidation, threats, interference or retaliation.  See Wentworth v. Hedson, 493 F. Supp. 2d 559, 565 (E.D.N.Y.  2007).  In addition, where, as here, the Plaintiffs claims are premised on the interference with the enjoyment of a right to be free from discrimination under section 3604, a section 3617 claim cannot be maintained if the plaintiff does not plausibly allege that "he possessed requisite qualifications for the transaction"—in this case the rental of the apartment.  Hickson v. Home Fed. of Atlanta, 805 F. Supp. 1567, 1572 (N.D. Ga. 1992), aff'd, 14 F.3d 59 (11th Cir. 1994).

Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation".  42 U.S.C. § 12182.  Section 504 of the Rehabilitation Act provides in pertinent part that:

> No otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794.  The Rehabilitation Act and the ADA "impose identical requirements".

Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1998).  To establish violation of Title III of ADA or the Rehabilitation Act a plaintiff must plead that:  (1) he or she has a disability; (2) he or she was "otherwise qualified" for the benefit that has been denied; (3) the defendants are subject to one of the acts, and (4) he or she was denied opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his or her disability.  See Cave v. East Meadow Union Free School Dist., 480 F. Supp. 2d 610, 640 (E.D.N.Y. 2007) (Spatt, J.) (noting that where the subtle differences in the statutes are not relevant "the Second Circuit has instructed that it is appropriate

16

to treat the plaintiffs' Section 504 claim identically to the plaintiffs' ADA claim") (collecting

cases); see also Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (applying identical elements for

a prima facie claim under the ADA and the Rehabilitation Act).

As indicated above, common to all housing discrimination claims under the FHA,

NYHRL, ADA, and the Rehabilitation Act is the requirement that "a plaintiff show that he was

qualified for an available benefit and was denied that benefit". Passanante v. R.Y. Mgmt. Co.,

Inc., No. 99-CV-9760, 2001 WL 123858, at *5 (S.D.N.Y. Feb. 13, 2001). In the instant motion,

the Defendants contend that the Plaintiffs have failed to state a claim for housing discrimination

under all of the applicable statutes because they have not sufficiently pled that they were

"qualified" to rent Unit C-3.

"To satisfy the 'qualified' element for a prima facie [housing discrimination claim], the

renter must satisfy the applicable criteria that the owner established." Kennedy v. Related

Mgmt., No. 08-CV-3969, 2009 WL 2222530, at *4 (S.D.N.Y. July 23, 2009), aff'd 403 F.

App'x 566 (2d Cir. 2010) (citing Mitchell v. Shane, 350 F.3d 39, 47–48 (2d Cir. 2003)); see also

Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032, 1038 (2d Cir. 1979) (stating that the

qualification element of a prima facie case of housing discrimination is met where the applicant

"meets the objective requirements of a landlord"); Passanante, 2001 WL 123858, at *5 (holding

that a plaintiff was not qualified to rent an apartment where he did not meet the requirement of

having a Section 8 rent subsidy); cf. See Mitchell v. Century 21 Rustic Realty, 233 F. Supp. 2d

418, 434 (E.D.N.Y. 2002) (noting in the context of a housing discrimination claim that

"[c]ontract law permits offerors to set the terms of acceptance[.]").

Although the Defendants argue that the Plaintiffs have not alleged, and could not allege,

that they were otherwise financially qualified to rent Unit C-3, courts have held that a plaintiff's

financial qualification is not central to the determination where, as the Plaintiffs allege here, the landlord had "objective requirements, often long-standing ones, clearly communicated to potential renters or purchasers of property that relate to that person's ability, financial or otherwise, to purchase or rent the property in question".  Mancuso v. Douglas Elliman, LLC, No. 07-CV-2368, 2011 WL 3792360, at *9 (S.D.N.Y.  Aug. 24, 2011); Woods  v. Real Renters Ltd., No. 01-CV-269, 2007 WL 656907, at *9 (S.D.N.Y. Mar. 1, 2007) (holding that the plaintiffs satisfied their prima facie burden on a FHA housing discrimination claim where evidence in the record suggested the plaintiffs were unqualified to rent from an objective standard, but lack of evidence that the landlord had "a specified set of criteria" coupled with the fact that "the brokers seemed to think that plaintiffs might be financially acceptable to the landlord" suggested that the plaintiffs may be able to show they were qualified under the objective criteria).   However, to the extent the Plaintiffs financial ability to rent Unit C-3 is relevant, the Plaintiffs have failed to allege any facts supporting such a claim beyond the conclusory statement that they were "ready, willing and able to lease, rent, occupy, and take possession of unit C-3".  (Compl., ¶ 83.)  Thus, in order to state a valid housing discrimination claim, the Plaintiffs were required to plead that they met the Defendants' objective requirements for the lease.

Where a plaintiff alleges they were otherwise qualified because they met the landlord's objective criteria, to survive a motion to dismiss the plaintiff must plead more than the conclusory assertion that they met the stated requirements and therefore "were qualified to rent or purchase the housing".  Sanders v. Grenadier Realty, Inc., 367 F. App'x 173, 175–76 (2d Cir. 2010).  Rather, a plaintiff must allege facts from which the court can infer that they satisfied any "necessary precondition[s]".  Id.; cf. Elmowitz, 571 F. Supp. 2d at 376 (denying a motion to dismiss and finding that the plaintiff had sufficiently pled that he was qualified to rent the

18

apartment by alleging that he intended to renew his lease and had renewed his lease in the past).

As set forth below, whether the Plaintiffs have adequately pled that they were "qualified" to rent

Unit C-3 is dependent on what were the necessary preconditions for the lease agreement were.

According to the Plaintiffs, the applicable requirements for renting Unit C-3 were set

forth in the Offer Letter, which states:

> This is to confirm that I will provide you one-year lease for apartment C-3 at 51 Smith Street, Merrick, NY at the monthly rental of $1275. The conditions are two months security and the first month's rent must be paid at the lease signing and the rent must be guaranteed by a governmental agency.

(Compl., ¶ 41.) The Plaintiffs assert that, based on their interpretation of the last sentence of the

Offer Letter (the "lease conditions provision"), the requisite qualifications for a one-year lease of

Unit C-3 were: (1) two months security ("security deposit") and the first month's rent to be paid

at the lease signing, and (2) a guarantee by a government agency for the security deposit and first

month's rent. The Defendants do not dispute, nor could they, that the Plaintiffs have adequately

pled that they had obtained a government guarantee from DSS for the security deposit and the

first month's rent. However, the Defendants argue that the required "guarantee[] by a

governmental agency" was for the ongoing rent payments, not the initial amounts due.

Therefore, because the Plaintiffs have not alleged that they were qualified for or could obtain a

guarantee from a governmental agency for the ongoing rent payments, the Defendants assert that

the Plaintiffs have failed to plausibly allege a housing discrimination claim under any of the

applicable statutes.

As an initial matter, the Court notes that, while persuasive, the written rental conditions

are not always binding where there is evidence or allegations that the requirements conveyed by

the landlord diverged from the writing. For example, a plaintiff can allege that verbal

communications extended or modified the written rental requirements. Cf. Cleveland v. Bisuito,

No. 03-CV-6334, 2004 WL 2966927, at *4 (W.D.N.Y. Dec. 21, 2004) (holding that an issue of

fact existed as to whether the plaintiff was "qualified" to rent an apartment because, although

"the implication [in the lease] is that the payments were required prior to moving in", there was

evidence in the record to support the plaintiffs' claim that the defendant's agent "offered to

revise the lease to allow plaintiffs additional time during which to pay the security deposit").

However, in the instant case, the Plaintiffs do not allege any facts from which the Court can infer

that the Defendants directly represented that a guarantee was only required for the initial security

deposit and first month's rent.

Instead, all communications about the conditions for the lease are alleged to have

occurred through the exchange of the Offer Letters.  (See, e.g., Compl., ¶ 32 (alleging that after

Sharon Johnson first viewed the available apartments on January 14, 2009, the Defendants

"prepared an offer letter for [Ennis] that contained an offer setting forth terms and conditions of

leasing the apartment"); Compl., ¶ 39 (alleging that "in drafting and providing [Ennis] with

several lease offer letters" Levy did not indicate any concern with Ennis' "status as a DSS and

SSI recipient or ability to pay for the unit").).  Indeed, in opposition to the instant motion, the

Plaintiffs do not argue that the Defendants' interpretation of the letter conflicts with any verbal

representations made to the Plaintiffs.  Rather the Plaintiffs assert that on a motion to dismiss the

Court must accept their characterization of the lease conditions as true, or in the alternative, that

the lease conditions provision is ambiguous and therefore the actual lease conditions are a

question of fact inappropriate for resolution on a motion to dismiss.  The Court disagrees.

On a motion to dismiss, the Court "need not accept [the Plaintiffs'] interpretation of the

language of [the Offer Letter], although on a motion to dismiss it should resolve any ambiguities

in [their] favor".  Verzani v. Costco Wholesale Corp., 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009).

Furthermore, whether the Offer Letter is ambiguous is a question of law suitable for disposition

on a motion to dismiss.   See Medtech Prods. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 807

(S.D.N.Y.2008) (internal quotation marks omitted); Cont'l Ins. Co. v. Atl. Cas. Ins. Co., 603

F.3d 169, 180 (2d Cir. 2010) (internal quotation marks omitted)).  The Court applies the

principles of contract interpretation to determine whether the lease conditions provision in the

Offer Letter is ambiguous.

The Plaintiffs first argue that the lease conditions provision is ambiguous because it can

be reasonably interpreted to mean either:  "1) the first month's rent and two months security

deposit must be guaranteed by a governmental agency or 2) every month's rent and two months

security deposit must be guaranteed by a governmental agency".  (Pls' Opp. at 10.)  However,

the fact that the Plaintiffs can come up with multiple ways to interpret the lease conditions

provision does not render it ambiguous.  Indeed, the Second Circuit has cautioned that, in

determining whether a contract is ambiguous a "'court should not find the language ambiguous

on the basis of the interpretation urged by one party, where that interpretation would strain the

contract language beyond its reasonable and ordinary meaning.'"  Fed. Ins. Co. v. Am. Home

Assur. Co., 639 F.3d 557,568 (2d Cir. 2011) (quoting Metro. Life Ins. Co. v. RJR Nabisco, Inc.,

906 F.2d 884, 889 (2d Cir. 1990)); Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.,

595 F.3d 458, 467 (2d Cir. 2010) ("Language whose meaning is otherwise plain does not become

ambiguous merely because the parties urge different interpretations in the litigation, unless each

is a reasonable interpretation") (internal quotation marks and citations omitted).  Thus, the Court

turns to whether the lease conditions provision is ambiguous.

Under New York law, "an ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 236 (2d Cir. 2008) (quoting World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 184 (2d Cir. 2003)).  "Contracts must be read as a whole, and if possible, courts must interpret them to effect the general purpose of the contract." Postlewaite v. McGraw–Hill, Inc., 411 F.3d 63, 67 (2d Cir. 2005) (citing Westmoreland Coal Co. v. Entech, Inc., 100 N.Y.2d 352, 358, 763 N.Y.S.2d 525, 794 N.E.2d 667 (2003)).  Where, as here, the parties dispute the meaning of a particular contract clause, "the task of the court 'is to determine whether such clauses are ambiguous when read in the context of the entire agreement'".  Law Debenture, 595 F.3d at 467 (quoting Sayers v. Rochester Telephone Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993)).  "If the contract is unambiguous, that is, only susceptible to one reasonable interpretation, the court must give effect to the contract as written."  Madeleine L.L.C. v. Street, 757 F.Supp.2d 403, 405 (S.D.N.Y. 2010) (internal quotation marks omitted).

The Plaintiffs argue, albeit in the context of the motion to dismiss their breach of contract claim, that to the extent the Defendants have proffered a reasonable interpretation of the lease conditions provision, it is nevertheless ambiguous because their interpretation is also reasonable. According to the Plaintiffs, a reasonable reading of the lease conditions provision is that "only the rent due upon signing is to be guaranteed by a governmental [agency], not the rent due on the remainder of the lease agreements".  (Pls.' Opp. at 13.)  To support this contention, the Plaintiffs separate the lease conditions provision into two clauses:  "(1) 'the condition are two months

22

security,' and (2) 'the first month's rent must be paid at the lease signing.'" (Pls.' Opp. at 13.) The Plaintiffs contend that because there is no punctuation or grammar, the portion of the sentence stating that "the rent must be guaranteed by a governmental agency" cannot be read independently of the preceding two clauses, but rather can be reasonably interpreted to refer to the amounts included in them.

"In interpreting a contract under New York law, words and phrases . . . should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp., 424 F.3d 195, 206 (2d Cir. 2005) (citation and internal quotation marks omitted). "'[A]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" Id. (quoting Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003)). Furthermore, where a word is not defined in the writing, the word is given its ordinary meaning. See Fed. Ins. Co., 639 F.3d at 568.

Read as a whole, the Offer Letter sets forth the lease conditions that must be met prior to entering in to a one-year lease agreement. To trigger the Defendants' obligation to provide the Plaintiffs with a one-year lease, the Offer Letter refers to both a required payment due at the lease signing and a required rent guarantee from a government agency. By definition it would be nonsensical to include as a necessary precondition to the Defendants' performance both a payment, which is a "discharge of a debt or obligation", and a guarantee, which is a "promise to answer for [another's] debt . . ." for the same amount due. Webster's Third New International Dictionary 1659, 1007 (1976 ed.). Thus, giving each of these terms their plain meaning, the interpretation urged by the Plaintiff "strain the contract language beyond its reasonable and ordinary meaning" insofar as it would render either the payment requirement or the guarantee

requirement meaningless or superfluous.  Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990) (citation and internal quotation marks omitted).

Accordingly, because the Court finds that the requirement of "a guarantee from a governmental agency" for "the rent" cannot be referring to the security deposit and first month's rent, the only reasonable interpretation of the lease conditions provision is that the Plaintiffs were required to obtain a guarantee from a government agency for the remaining rent due for the one-year lease period.  Although the Plaintiffs allege throughout the complaint that Ennis Johnson was a qualified recipient of SSI and of DSS housing subsidies generally, the complaint is devoid of any facts from which the Court can infer that, if given the opportunity, the Plaintiffs' could have provided a guarantee from a governmental agency for the ongoing rent payments.  Thus, because the Plaintiffs have failed to plausibly allege that they were qualified to rent Unit C-3, they have failed to state valid housing discrimination claims under the FHA, ADA, Rehabilitation Act, and NYHRL.

**E.  As to the Remaining State Law Claims**

The remaining causes of action in the complaint, Counts IX and X assert state law claims. In particular, Count IX asserts a cause of action against Levy under the New York State Civil Rights Law, which prohibits strategic lawsuits against public participation, i.e., SLAPP suits, alleging that Levy commenced the Defamation Action "to harass, deter and punish [Ennis Johnson] for objecting to [Levy's] discriminatory practices" in violation of Ennis Johnson's First and Fourteenth Amendment rights, and rights under the FHA and other applicable state statutes. (Compl., ¶ 143.) In addition, in Count X of the complaint, the Plaintiffs allege that the Ennis and Levy had a verbal contract, whereby Levy would lease Unit C-3 to Ennis "pending a rent guarantee from a governmental agency", and Levy's failure to provide the Plaintiffs with a lease

upon receiving the Rent Guarantee for the security deposit and first month's rent constituted a breach of contract.  (Compl. ¶ 151.)

A court "may decline to exercise supplemental jurisdiction over a [pendent state law] claim" if the court "has dismissed all [federal] claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Once [a court's] discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity in deciding whether to exercise jurisdiction." Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal citation and quotation marks omitted).

Having dismissed all of Plaintiffs federal claims, and given the early stage of this litigation, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  Accordingly, Defendants' motion to dismiss Plaintiffs' state law claims is granted. However, as discussed below, the Court is granting the Plaintiffs the opportunity to serve an amended complaint with respect to their housing discrimination claims.  Thus, the dismissal of Counts IX and X is without prejudice to the Plaintiffs right to reassert these claims in the amended complaint, and the Defendants right to then seek their dismissal.

**F.  Leave to Amend**

Finally, the Court deems it prudent to allow the Plaintiffs an opportunity to amend the complaint.  First, while the Offer Letter is not ambiguous as to the necessary conditions for a lease agreement, it is silent as to when the conditions needed to be met.  Although the Plaintiffs have not alleged that they could have obtained a governmental guarantee for the ongoing rent, such an allegation could, if properly pled, plausibly support that the Plaintiffs were "otherwise qualified" to rent the apartment.  See Mitchell v. Shane, 350 F.3d 39 (2d Cir. 2003) (reversing the lower court's denial of a preliminary injunction in an FHA housing discrimination case on

25

the "qualified to rent" element because "[e]ven assuming that the [defendants'] preference for greater equity in the property was an absolute prerequisite, it [was] anything but clear that the [plaintiffs] were unable to provide this level of financing").

Furthermore, as previously noted, the complaint makes reference to a meeting between Sharon and Levy and a "verbal contract" between Ennis and Levy.  While these allegations are too vague to support an inference that the Defendants conveyed lease conditions outside of the Offer Letter, they demonstrate that the Plaintiffs may have additional information to include in the complaint indicating that a criteria was conveyed outside of the Offer Letters.  Thus, the Court will afford the Plaintiffs twenty days from the date of this order to serve an amended complaint with respect to the housing discrimination claims.

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that Counts VII, VIII, XI, XII, XIII, XIV, XV, and XVI, which have been voluntarily withdrawn by the Plaintiffs are dismissed without prejudice, and is further

**ORDERED**, that, because all claims against Sue Campbell have been voluntarily withdrawn, the complaint is dismissed as against Sue Campbell without prejudice, and it is further,

**ORDERED**, that the Defendants' motion to dismiss the complaint against Diane Levy pursuant to Fed. R. Civ. P. 12(b)(6) is granted, and it is further

**ORDERED**, that the Defendants' motion to dismiss Counts I through VI of the complaint pursuant to Fed. R. Civ. P. 12(b)(6) is granted, and it is further

**ORDERED**, that the Plaintiffs are afforded twenty days from the date of this order to serve an amended complaint with respect to the above dismissed Counts I through VI of the complaint, and it is further

**ORDERED**, that the Defendants' motion to dismiss Counts IX and X is granted without prejudice.

**SO ORDERED.**
Dated: Central Islip, New York
September 19, 2011

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge