**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
ENNIS JOHNSON, SHARON JOHNSON,

               Plaintiffs,

           -against-

JAY LEVY, DIANE LEVY, SUE CAMPBELL,
51 SMITH STREET L.L.C., its members,
managers, and/or assigned, agent or otherwise in
his/her official and individual capacity,

               Defendants.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
10-CV-3217 (ADS)(ETB)

**APPEARANCES:**

**Law Offices of Frederick K. Brewington**
*Attorneys for the plaintiffs*
556 Peninsula Blvd.
Hempstead, NY 11550
    By:  Frederick K. Brewington, Esq.

**Kardisch, Link & Associates, P.C.**
*Attorneys for the defendants*
53 N. Park Avenue, Suite 201
Rockville Centre, NY 11570
    By:  Josh H. Kardisch, Esq., Of Counsel

**SPATT, District Judge**.

       This case arises from claims by Plaintiffs Ennis Johnson and Sharon Johnson ("the

Plaintiffs") that 51 Smith Street L.L.C. and its owner Jay Levy (collectively "the Defendants")

violated federal and housing discrimination laws by denying them the opportunity to rent an

apartment based on Ennis Johnson's HIV-positive status.  This Court previously dismissed the

Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for

failure to state a claim upon which relief can be granted, but did so without prejudice to the

Plaintiffs' right to serve an amended complaint within twenty days of the dismissal.

The Plaintiffs have filed an Amended Complaint and the Defendants again have filed a motion to dismiss the Plaintiffs' housing discrimination claims pursuant to Rule 12(b)(6) for failure to state a claim.  In addition, the Defendants have filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11").  For the reasons set forth below, the Court grants the Defendants' motion to dismiss the Amended Complaint, and denies the Defendants' motion for sanctions.

## I.  BACKGROUND

The following facts are a condensed version of the facts as set forth in the Plaintiffs' Amended Complaint.  A more detailed recitation of the facts is set forth in the Court's previous decision <u>Johnson v. Levy</u> ("<u>Johnson I</u>"), 812 F. Supp. 2d 167 (E.D.N.Y. 2011).  The Court assumes the parties familiarity with that decision.

### A.  Factual Background

The Plaintiffs Ennis and Sharon Johnson are a married couple.  Ennis Johnson is HIV-positive and receives public assistance from the Department of Social Services ("DSS") in the areas of medical and food services and housing accommodations, and also receives Social Security Disability ("SSD") income in the amount of $1,496.00 per month.

In or about November 2008, there was a fire in the Johnson's then current apartment, rendering them homeless.   After temporarily living in a hotel, in January of 2009, the Johnsons attempted to rent an apartment in a building located at 51 Smith Street, Merrick, New York ("51 Smith Street apartment building"), which is owned by defendants 51 Smith Street L.L.C. and Jay Levy.  Although not clear from the complaint, the Plaintiffs state in their submissions to the Court that, as a result of the fire, the DSS "became involved with supplying emergency aid".  Specifically, the Plaintiffs state that "DSS agreed to provide a 'one shot deal' to the Plaintiffs, in

2

which DSS provides first months rent, the security deposit and brokers fee in order to aid

Plaintiffs in moving into a dwelling".   (Pls.' MTD Br. at 3.)

  According to the Plaintiffs, Sharon contacted Levy on January 14, 2009 expressing her

interest in two available units.  In this conversation, the Plaintiffs contend that Sharon informed

Levy that Ennis was a recipient of DSS and SSD governmental public assistance and that they

were in need of immediate housing.  Initially, the Johnsons indicated that they wanted the more

expensive unit, and Levy provided them with an offer letter setting forth the conditions for

leasing that unit.  However, according to the Plaintiffs, a DSS caseworker named "Mrs.

Pearson", contacted Levy and informed him that Ennis only qualified for $1,275 per month in

DSS rental payments and therefore the Johnsons would only qualify for DSS funding for the less

expensive apartment, Unit C-3.  As a result, Levy revised the initial offer letter to reflect the

same conditions, but for Unit C-3.  Levy provided the typed version of this letter to DSS on

January 27, 2009 for their review and approval (the "Offer Letter").  The Offer Letter provided:

> This is to confirm that I will provide you one-year lease for
> apartment C-3 at 51 Smith Street, Merrick, NY at the monthly
> rental of $1275.  The conditions are two months security and the
> first month's rent must be paid at the lease signing and the rent
> must be guaranteed by a governmental agency.

(Am. Compl., ¶ 38.)

  That same day, after receiving the Offer Letter, DSS, with the knowledge and consent of

Levy, performed a health and safety inspection of Unit C-3 and approved the apartment as

inhabitable.   On February 5, 2009, Sharon met with one of Levy's employees, defendant Sue

Campbell ("Campbell"), at the DSS offices in Hempstead in order to acquire a document

reflecting that DSS would pay for the security deposit and first month's rent.

Subsequently, Campbell drove Sharon to get the DSS document notarized.  According to Sharon, during the course of this drive, she informed Campbell that Ennis was HIV-positive. Sharon claims that immediately after she revealed this information, she overheard Campbell call Levy and tell him that Ennis was HIV-positive.  Thereafter, at a time unspecified in the complaint, Levy allegedly advised Ennis "that he would not rent to anyone who was HIV positive because children and elderly persons resided at the apartment building located at 51 Smith Street, Merrick, New York".  (Am. Compl., ¶ 53.)   Later, after "numerous verbal requests", again, at an unspecified time, Levy allegedly told the Johnsons that he denied their application to lease Unit C-3 because Ennis had misrepresented his employment status.  (Compl., ¶¶ 57 & 58.)

On February 10, 2009, attorney Robert Halpern ("Halpern") of Nassau Suffolk Law Services, Inc. ("NSLS"), contacted Levy on the Johnsons behalf to discuss the denial of the Johnsons application.  According to the Johnsons, when Halpern asked Levy why he had denied their apartment application, Levy allegedly replied "[Ennis] has AIDS . . . I can't have that in my building".  (Am. Compl., ¶ 68.)  Based on his belief that Levy had discriminated against him, and that housing discrimination was a matter of public concern, Ennis expressed his version of the above-stated facts to various news outlets.

As a result, on February 18, 2009, Levy commenced an action against the Johnsons, Halpern, and various media outlets in New York State Supreme Court, Nassau County for defamation, among other causes of action ("the Defamation Action").  See Levy v. Johnson, No, 2851/09 (N.Y. Sup. Ct., Nassau Cnty).

4

**B.  Procedural History**

On July 14, 2009, the Johnsons commenced the instant action against Jay Levy, his wife Diane Levy, Sue Campbell, and 51 Smith Street, L.L.C. asserting sixteen causes of action for violations of federal and state statutes as well as state common law based on alleged housing discrimination and the subsequent Defamation Action ("the Initial Complaint").

On September 30, 2010, the Defendants collectively moved to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) for failure to state a claim.  Prior to the Court ruling on the motion, the Plaintiffs voluntarily dismissed a number of causes of action, including their claims against Sue Campbell.

By order dated September 19, 2011, the Court granted the Defendants' motion to dismiss the Initial Complaint in its entirety.  First, because the Plaintiffs had failed to allege any individual misconduct by Diane Levy, or assert any causes of action against her directly, the Court dismissed the complaint as against Diane Levy.  The remaining causes of action subject to the first motion to dismiss alleged that:  (1) Levy and 51 Smith Street L.L.C. were liable for housing discrimination based on disability in violation of the Fair Housing Amendments Act, 42 U.S.C. §§ 3604(f)(2)(a), 3604(f)(1), & 3617; Title III of the ADA, 42 U.S.C. § 12182; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the NYHRL, N.Y. Exec. Law § 296(2-a) (the "housing discrimination claims"); (2) Levy and 51 Smith Street L.L.C. violated the New York State Anti-SLAPP statute, N.Y. Civil Rights Law §§ 70-a & 76-a by commencing the Defamation Action; and (3) Levy was liable for breach of contract.

With respect to the housing discrimination claims, the Court set forth the law governing disability discrimination claims under all four of the statutes, and noted that, "common to all housing discrimination claims under the FHA, NYHRL, ADA, and the Rehabilitation Act is the

requirement that 'a plaintiff show that he was qualified for an available benefit and was denied

that benefit'". <u>Johnson I</u>, 812 F. Supp. 2d 167, 180 (E.D.N.Y. 2011) (quoting <u>Passanante v. R.Y.

Mgmt. Co., Inc.</u>, No. 99-CV-9760, 2001 WL 123858, at *5 (S.D.N.Y. Feb. 13, 2001)).  Because

the Plaintiffs premised their argument that they were otherwise qualified to rent the apartment on

the rental criteria set forth in the Offer Letter, the Court held that "in order to state a valid

housing discrimination claim, the Plaintiffs were required to plead that they met the Defendants'

objective requirements for the lease." <u>Id.</u> at 181.  Ultimately, the resolution of the first motion to

dismiss turned on an interpretation of the Offer Letter.

In this regard, the parties disputed the meaning of the following sentence in the Offer

Letter, which the Court referred to as the "lease conditions provision":  "The conditions are two

months security and the first month's rent must be paid at the lease signing and the rent must be

guaranteed by a governmental agency."  According to the Plaintiffs,  "the requisite qualifications

for a one-year lease of Unit C–3 were: (1) two months security ("security deposit") and the first

month's rent to be paid at the lease signing, and (2) a guarantee by a government agency for the

security deposit and first month's rent". <u>Id.</u> at 181.  By contrast, the Defendants argued "that the

required "guarantee[ ] by a governmental agency" was for the ongoing rent payments, not the

initial amounts due." <u>Id.</u>

Applying the principles of contract construction, the Court held that the lease conditions

provision in the Offer Letter was unambiguous, and that "the only reasonable interpretation of

the lease conditions provision is that the Plaintiffs were required to obtain a guarantee from a

government agency for the remaining rent due for the one-year lease period." <u>Id.</u> at 184.

Although the Plaintiffs had alleged that they obtained a guarantee from DSS for the security

deposit and initial month's rent, the Court noted that "the complaint is devoid of any facts from

6

which the Court can infer that, if given the opportunity, the Plaintiffs could have provided a guarantee from a governmental agency for the ongoing rent payments." Id.  As a result, the Court held that "because the Plaintiffs have failed to plausibly allege that they were qualified to rent Unit C–3, they have failed to state valid housing discrimination claims under the FHA, ADA, Rehabilitation Act, and NYHRL." Id.  Having dismissed the Plaintiffs' federal claims, the Court declined to exercise supplemental jurisdiction over the state law causes of action.

Although the Court dismissed the Plaintiffs housing' discrimination claims, the Court granted the Plaintiffs an opportunity to amend the complaint, stating:

> First, while the Offer Letter is not ambiguous as to the necessary conditions for a lease agreement, it is silent as to when the conditions needed to be met. Although the Plaintiffs have not alleged that they could have obtained a governmental guarantee for the ongoing rent, such an allegation could, if properly pled, plausibly support that the Plaintiffs were "otherwise qualified" to rent the apartment. . . .
>
> Furthermore, as previously noted, the complaint makes reference to a meeting between Sharon and Levy and a "verbal contract" between Ennis and Levy. While these allegations are too vague to support an inference that the Defendants conveyed lease conditions outside of the Offer Letter, they demonstrate that the Plaintiffs may have additional information to include in the complaint indicating that a criteria was conveyed outside of the Offer Letters.

Id. at 185.

On October 11, 2011, the Plaintiffs filed an Amended Complaint reasserting their federal and state housing discrimination claims as well as their state law claim that Levy and 51 Smith Street L.L.C. violated the New York State Anti-SLAPP statute, N.Y. Civil Rights Law §§ 70-a & 76-a by commencing the Defamation Action.  The Amended Complaint contained essentially cosmetic changes to the Initial Complaint, and included only one new substantive allegation, namely the amount of SSD income that Ennis Johnson received per month.

## C.  The Instant Motions

On December 2, 2011, the Defendants filed a "Motion to Dismiss and For Sanctions and Other Relief".  Subsequently, the Court advised the Defendants that, pursuant to Rule 11(c)(2), a motion for sanctions must be filed separately.  Thus, on January 6, 2012, the Defendants filed a separate "Motion for Sanctions".  In both motions, the Defendants contend that the Amended Complaint not only fails to cure the deficiencies in the Initial Complaint relating to the Plaintiffs' qualifications to rent the apartment, but also contains allegations that contradict the Plaintiffs' testimony in the Defamation Action.  As a result, the Defendants seek to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6), and for sanctions against the Plaintiffs and/or the Plaintiffs' counsel for violations of Rule 11.

## II.  THE MOTION TO DISMISS

The Defendants contend that the Court should dismiss the Amended Complaint because the Plaintiffs have failed to assert any allegations "that they 'could have obtained a governmental guarantee for the ongoing rent', or that there was 'additional information to include in the complaint indicating that a criteria was conveyed outside the Offer Letters'".  (Defs.' MTD Br. at 9 (quoting Johnson I, 812 F. Supp. 2d at 185.)  The Court agrees.

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007).  In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007).  Only if this Court is satisfied that "the complaint

cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Hertz Corp. V. City of New York, 1 F.3d 121, 125 (2d Cir. 1993).  The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L. Ed 90 (1974)).

The Court need not engage in a lengthy analysis to determine that the Plaintiffs' Amended Complaint is subject to dismissal.  In the Amended Complaint, the Plaintiffs repeat the allegations from the Initial Complaint that they were "qualified" to rent the apartment because they met the requirement in the Offer Letter of a government guarantee of the security deposit and initial monthly payments.  For example, the Amended Complaint contains the following allegations:

> Defendant LEVY, as expressed in the numerous lease offer letters, agreed to provide PLAINTIFF ENNIS JOHNSON and his wife SHARON JOHNSON with housing provided that a governmental agency guarantee the initial rent and security payment. (Am Compl., ¶ 44.)
>
> Defendant LEVY knew or should have known, based on his extensive experience in providing housing for DSS clients, that the RENT GUARANTEE and/or its equivalent [wherein DSS guaranteed the initial payments only] provided by Plaintiff ENNIS JOHNSON, was the equivalent of the governmental agency guarantee required in his several letters of offer which states, "rent must be guaranteed by a governmental agency. (Am. Compl., ¶ 50.)
>
> Defendant Levy and DEFENDANT 51 SMITH STREET LLC, through his extensive experience with governmental agencies, specifically DSS, knew or had [] reason to know that DSS would in fact guarantee the initial rental payments and security deposit as required. (Am. Compl., ¶ 72.)

The Court has already held that such allegations fail to state a claim for housing discrimination because they do not plausibly allege that the Plaintiffs were "otherwise qualified"

to rent the apartment.  Despite again including these allegations in the Amended Complaint, the Plaintiffs do not attempt to reargue that they support their claim.

Rather, in opposition to the instant motion, the Plaintiffs contend that they have plausibly alleged that they were qualified to rent the apartment because they could have obtained a government guarantee for the ongoing rent payments based on their receipt of SSD benefits. Specifically, the Plaintiffs argue that social workers/case managers engage in a "well known" practice of assisting SSD income recipients with "setting up bank accounts wherein budgets would be created and monies for rent payment would be directly deposited into an account established specifically for the payment of rents", and that "through this process landlords are guaranteed payment of this government subsidy for persons such as Plaintiffs".  (Pls.' MTD Br. at 12–13.)

The Plaintiffs identify the following three ways that SSD payments could be set up to constitute a government guarantee:  1) direct deposit to the Defendants bank account for the monthly rent on the day Plaintiff Ennis Johnson received his SSD payment; 2) Plaintiffs to arrange for the Social Security Administration to directly pay the Defendants the monthly rent from the Plaintiffs' SSD income; or 3) Plaintiffs to arrange to have a not-for-profit set up as the payee through the Social Security Administration that then pays Defendants the rent from the SSI benefits."  (Id. at 13.)  However, these allegations are not in the Amended Complaint. Rather, the Plaintiffs assert these facts for the first the time in their briefs in opposition to the motion to dismiss and the motion for sanctions.

It is well-settled that the Plaintiffs cannot amend their complaint through arguments in a brief, and "such facts are thus irrelevant for purposes of determining whether [the Plaintiffs] [c]omplaint should be dismissed for failure to state a claim."  Pollio v. MF Global, Ltd., 608 F.

Supp. 2d 564, 568 n.1 (S.D.N.Y. 2009); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d

184, 191 (2d Cir. 2007) (stating that on a motion to dismiss the court's review is "limited to the

facts as asserted within the four corners of the complaint, the documents attached to the

complaint as exhibits, and any documents incorporated in the complaint by reference"); Wright

v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (a party is not entitled to amend the

complaint through statements made in motion papers).

The Plaintiffs do not dispute that the above-stated facts are not included in the Amended

Complaint, but rather argue that the "Amended Complaint's reference to SSI is sufficient to

allege that Plaintiffs were able to obtain a government guarantee to pay the rent". (Pls.' MTD Br.

at 13).  However, the Court explicitly rejected this exact argument in Johnson I, stating:

> Although the Plaintiffs allege throughout the complaint that Ennis
> Johnson was a qualified recipient of SSI and of DSS housing
> subsidies generally, the complaint is devoid of any facts from
> which the Court can infer that, if given the opportunity, the
> Plaintiffs' could have provided a guarantee from a governmental
> agency for the ongoing rent payments.

812 F. Supp. 2d at 184.  The only new allegation in the Amended Complaint, which is set forth

in paragraph 12 of the Amended Complaint, is the amount of SSD income that Ennis Johnson

received per month.  Arguably, the fact that Ennis Johnson received monthly SSD income in an

amount greater than the amount of rent could support the Plaintiffs' claim when read in

conjunction with the new facts and arguments set forth in the Plaintiffs' opposition briefs.

However, this additional allegation, on its own, cannot cure the deficiency in the Initial

Complaint in light of the Court's holding in Johnson I that, "a plaintiff's financial qualification is

not central to the determination [of whether they are "otherwise qualified"] where, as the

Plaintiffs allege here, the landlord had objective requirements".  812 F. Supp. 2d at 180 (internal

quotation marks and citations omitted).

Thus, the Plaintiffs have not sufficiently pled that they were otherwise qualified to rent the apartment, and therefore have failed to state a claim for housing discrimination. Accordingly, the Court grants the Defendants' motion to dismiss the Amended Complaint.

Having dismissed the Plaintiffs' Amended Complaint, the Court must determine whether there is a basis for permitting them another opportunity to assert their housing discrimination claims based on the denial of their rental application. Rule 15(a) of the Federal Rules of Civil Procedure requires that courts freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). Thus, in the appropriate cases, it is the "usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). However, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

The Defendants dispute that any arrangement for direct deposit of the Plaintiffs' SSD income would satisfy the requirement of a government guarantee, and therefore contend that permitting the Plaintiffs to amend these claims would be futile. By contrast, the Plaintiffs argue that direct rental payments from their SSD income constitute a guarantee from a "governmental agency" for the ongoing rent. Further, the Plaintiffs contend that this type of government guarantee would have been sufficient to satisfy the Defendants' requirements based on, among other things: Levy's experience of renting to tenants who receive SSD income and DSS assistance; Levy's knowledge that the Plaintiffs received SSD income; Levy's knowledge that DSS's guarantee of the initial payments was a "one shot deal"; and the fact that Levy provided the Plaintiffs with the Offer Letter without any further inquiry into other sources of income or their employment status.

12

At this preliminary stage, the Court cannot rule as matter of law with regard to what constitutes a sufficient "government guarantee" or what the Defendants would have accepted as a "government guarantee".  Moreover, to the extent that the Defendants rely on the Plaintiffs' deposition testimony from the Defamation Action to argue that the Plaintiffs cannot, in good faith, include allegations that they could obtain a government guarantee for the ongoing rent, the Court explicitly held in <u>Johnson I</u> that the Court could not consider these documents on a motion to dismiss, holding:

> [T]he Defendants contend that because the Johnsons were deposed under oath, subject to cross-examination, and declined to submit an errata sheet or affidavit correcting any statements made during the deposition, the Court can consider the statements in their depositions as admissions.  However, all of the cases cited by the Defendants for this proposition, namely <u>United States v. Pfingst</u>, 477 F.2d 177 (2d Cir. 1973); <u>United States v. De Sisto</u>, 329 F.2d 929 (2d Cir. 1964); <u>United States v. Nuccio</u>, 373 F.2d 168 (2d Cir. 1967); and <u>United States v. Gonzalez-Carta</u>, 419 F.2d 548 (2d Cir. 1969), are distinguishable because they involved the admissibility of prior testimony at trial, not on a motion to dismiss. The Defendants also argue that the Court can take judicial notice of the deposition transcripts as part of the public record in the Defamation Action.
>
> . . . .
>
> Here, the Defendants contend that the Court can and should take judicial notice of the deposition transcripts because they constitute verified and sworn testimony, which is more reliable than the facts in an unverified initial complaint. The argument that a court can rely on previous testimony on a motion to dismiss for the purpose of contradicting facts asserted in the complaint was explicitly rejected by the Second Circuit in <u>Global Network Communications, Inc. v. City of New York</u>, 458 F.3d 150 (2d Cir. 2006). In <u>Global Network</u>, the court reversed a district court's dismissal of a complaint for failure to state a claim because the court relied in part on the testimony of the plaintiff's sole shareholder and president in an unrelated criminal proceeding. The Second Circuit found this to be reversible error because "not only did the district court consider external material in its ruling, it relied on those materials to make a finding of fact that controverted the plaintiff's own factual assertions set out in its complaint." 458 F.3d at 156 (emphasis in original).

> Thus, not only would it be reversible error for the Court to consider the deposition transcripts for the truth of the matter asserted, but it would be improper for the Court on a motion to dismiss to accept the statements in the deposition transcripts over the facts asserted in the complaint. See Iannuzzi v. Washington Mut. Bank, No. 07–CV–964, 2008 WL 3978189, at *6 n. 2 (E.D.N.Y. Aug. 21, 2008) (holding that on a 12(c) motion to dismiss, the court "cannot consider matters outside the pleadings, such as a deposition transcript [from another action]" and therefore disregarding any references to the transcript that were outside the scope of the pleadings).

812 F. Supp. 2d at 176–77.  The Defendants do not attempt to distinguish the above-cited cases, or cite any authority at all for the proposition that the Court can take judicial notice of deposition testimony from a prior action on a motion to dismiss.  Accordingly, these statements do not preclude the Court from granting the Plaintiffs leave to replead their housing discrimination claims based on the denial of their rental contract.

Ultimately, the Court finds that the information and arguments contained in the Plaintiffs' opposition brief suggest that they may be able to plausibly allege that they were "otherwise qualified" to rent the apartment.  Therefore, permitting the Plaintiffs an opportunity to amend the complaint would not be futile.  Thus, the Court affords the Plaintiffs twenty days from the date of this order to file a second amended complaint on their claims that the denial of their rental contract violated the federal and state housing discrimination claims.  However, in filing a second amended complaint, the Plaintiffs are "cautioned against perfunctory, insubstantial or cosmetic changes", the inclusion of which may subject them and/or their counsel to sanctions under Rule 11.  Boyce v. New York City Mission Soc., 963 F. Supp. 290, 300 (S.D.N.Y. 1997).

Finally, the Court notes that, on the last page of their brief in opposition to the motion to dismiss, the Plaintiffs request that the Court permit them an opportunity to amend the complaint to add an alternative cause of action for a source of income and disability discrimination based

14

on the Defendants' alleged policy of only renting to tenants who were "working Section 8".  The Court agrees with the Defendants' that this is not the proper method to seek to amend a complaint to add an entirely new cause of action.  Accordingly, the Plaintiffs' request to amend the complaint in this regard is denied, without prejudice to a renewal of this request in a formal motion that complies with the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of New York, and this Court's Individual Rules and Practices.

### III.  THE MOTION FOR SANCTIONS

The Defendants move for sanctions against the Plaintiffs and/or the Plaintiffs counsel on the grounds that the allegations in the Amended Complaint fail to comply with the Court's order in Johnson I, and contradict Ennis and Sharon Johnson's deposition testimony in the Defamation Action.

As a threshold matter, the Plaintiffs argue that the Court should deny the motion for sanctions because the Defendants failed to comply with the Safe Harbor Provision in Rule 11(c)(2).  Rule 11(c) provides a safe harbor of twenty-one days during which factual or legal contentions may be withdrawn or appropriately corrected in order to avoid sanctions. Fed. R. Civ. P. 11(c)(1)(A).  "Rule 11 and principles of due process require that 'the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.'"  Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999)).  "The safe-harbor provision is a strict procedural requirement."  Id.  "An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21–day safe harbor period."  Id.

15

Like the Defendants, the Court is confused by the Plaintiffs' contention that it did not receive notice proper notice of the instant motion.  On December 2, 2011, the Defendants filed a motion to dismiss the Amended Complaint.  In this motion, the Defendants requested that the Court "sanction Plaintiffs and/or Plaintiffs' counsel for knowingly and in bad faith making false allegations and/or for failing to comply with the Order of this Court in service the instant Amended Complaint".  (Defs.' MTD Br. at 14.)  After the Court advised the Defendants that the request for sanctions would not be considered because it failed to comply with Rule 11(c)(2), on December 9, 2011, counsel for the Defendants sent a letter by mail, email, and facsimile to counsel for the Plaintiffs stating that they intended to re-file the portion of the motion to dismiss seeking sanctions as a separate motion, and that the letter constituted notice of their motion pursuant to Rule 11.  (Kardisch Aff., Ex. L.)  Twenty-seven days later, on January 6, 2012, the Defendants filed the instant motion for sanctions.  The December 9, 2011 letter was attached as exhibit "L" to the Affidavit of John H. Kardisch submitted in support of the motion.

Nevertheless, in opposition to the instant motion, the Plaintiffs argue that the Defendants "filed their Motion for Sanctions with the Court prior to allowing Plaintiffs with any time in between, no less the mandated twenty-one (21) day period to amend the allegedly offending Amended Complaint".  (Pls.' Sanction Br. at 10.)  In so arguing, the Plaintiffs make no reference to the December 9, 2011 letter, let alone dispute that they received it.  Thus, the Court credits the Defendants' contention that the December 9, 2011 letter was served upon and received by the Plaintiffs' counsel.

Furthermore, the Court finds that there can be no dispute that the Defendants in this case satisfied the procedural requirements of the Safe Harbor Provision set forth in Rule 11(c)(2) both in spirit and in principle.  The Defendants served the Plaintiffs with the December 9, 2011 letter

16

incorporating by reference the previously filed motion more than 21 days before they filed the instant motion.  With the exception of allegations pertaining to conduct that allegedly occurred during the safe harbor period—which the Court does not consider—the grounds for the Plaintiffs' instant motion are identical to what was set forth in the procedurally defective motion, namely:  (1) the Plaintiffs' Amended Complaint fails to comply with the Court's order in Johnson I; and (2) the Plaintiffs included allegations in the Amended Complaint that directly contradict their sworn testimony in the Defamation Action.  See Star Mark Mgmt., Inc., 682 F.3d at 176 ("The motion for Rule 11 sanctions filed with the district court rested on substantially the grounds set forth in the earlier notice of motion, undercutting the argument that the motion did not comply with the safe harbor requirement.").

Accordingly, the December 9, 2011 letter incorporating the previously filed motion "gave [the Plaintiffs] notice of the alleged sanctionable conduct, and [the Plaintiffs] thus had the opportunity to determine whether there was a non-frivolous basis for the pleading".  Id. at 177. Nevertheless, the Plaintiffs did not withdraw or otherwise correct the Amended Complaint. Thus, the Court turns to the merits of the Defendants' motion.

Rule 11(b) of the Federal Rules of Civil Procedure states that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies" that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is:  (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery".  Fed. R. Civ. P. 11(b).  The purpose of Rule 11 "is to deter

baseless filings in district court and . . . streamline the administration and procedure of the federal courts."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990).

In general, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness."  Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000).  This "standard is appropriate in circumstances where the lawyer whose submission is challenged by motion has the opportunity, afforded by the 'safe harbor' provision, to correct or withdraw the challenged submission."  In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003).  The Second Circuit has cautioned that Rule 11 sanctions should be "made with restraint", Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir. 1999), and, even where a court determines that Rule 11(b) has been violated, the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion, Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004).  Although the Defendants do not identify the specific provision of Rule 11 that the Amended Complaint allegedly violated, the Court construes the motion as one asserting violations of Rule 11(b)(3).

Rule 11(b)(3) provides in pertinent part that, by presenting a complaint to the court, the attorney signing or filing the complaint "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  To succeed on a Rule 11(b)(3) motion, the moving party must make "a showing of objective unreasonableness on the part of the attorney or client signing the papers."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009) (quotation omitted).

18

A pleading violates Rule 11(b)(3) where "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002) (citation omitted); see also In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003). A statement of fact within a pleading "can give rise to the imposition of sanctions only when the 'particular allegation is utterly lacking in support.' " Kiobel v. Millson, 592 F.3d 78, 81 (2d Cir. 2010) (quoting Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 388 (2d Cir. 2003)). "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." Id. at 83 (citation omitted).

First, the Defendants seek sanctions on the grounds that Ennis and Sharon Johnson's deposition testimony in the Defamation Action "directly contradicts and/or conflicts with the allegations of the Amended Complaint". (Defs.' Sanctions Br. at 12.) Specifically, the Defendants argue that both of the Plaintiffs admitted that they were only receiving a DSS guarantee for the security deposit and first month's rent, and that, other than their monthly SSD income, they would not be receiving Section 8 or any other type of government assistance for the ongoing rent. Accordingly, the Defendants contend that any representation that the Plaintiffs were qualified to rent the apartment lacks any factual support and therefore constitutes sanctionable conduct.

As an initial matter, although characterized as a motion for sanctions, the Defendants primarily use this deposition testimony to argue that the Plaintiffs cannot state a plausible claim for housing discrimination. The Court agrees with the Plaintiffs that this is simply an attempt by the Defendants to avoid the Court's ruling in Johnson I that the Court cannot consider these extrinsic documents on a motion to dismiss—which, as previously noted, the Defendants did not adhere to on the instant motion to dismiss.

19

Furthermore, the Defendants argue that the Plaintiffs' prior testimony contradicts the allegations in the Amended Complaint based on the Defendants' definition of an acceptable government guarantee for the ongoing rent. However, as the Court noted above, the issues of what constituted an acceptable government guarantee, or whether the Plaintiffs would have been able to obtain a government guarantee for the ongoing rent remain unresolved. Thus, at this stage, the Court cannot say that any prior statements by the Plaintiffs that they would pay their ongoing monthly rent from their SSD income contradicts the allegations in the Amended Complaint. See Young v. Suffolk County, 705 F. Supp. 2d 183, 215 (E.D.N.Y. 2010) ("If the Young defendants, following discovery, can[] demonstrate that the factual allegations are false, and were known to be false at the time of the filing of the complaint, or that any other grounds for sanctions exist, then they can renew their motion for sanctions at that time.").

The Defendants also seek sanctions against the Plaintiffs and/or the Plaintiffs' counsel for their failure to comply with the Court's order in Johnson I, insofar as they continue to allege in the Amended Complaint that the Plaintiffs were qualified to rent the apartment because they obtained a rent guarantee from DSS for the security deposit and first month's rent. There is no dispute that the Amended Complaint repeats these allegations. (See, e.g., Am. Compl., ¶¶ 44, 50, & 72.) Indeed, in opposing the instant motion, the Plaintiffs' counsel does not address these duplicative allegations, and abandons any argument that they support a viable claim. Rather, the Plaintiffs rely on new factual allegations and arguments in their opposition briefs to support the plausibility of their claims. In light of the Court's holding in Johnson I that the Offer Letter unambiguously required a government guarantee of the ongoing rent payments, the Plaintiffs' counsel cannot reasonably argue that there is or likely will be evidentiary support for the factual contentions in the Amended Complaint that the Plaintiffs were "qualified" to rent the apartment

because they met the requirement in the Offer Letter of a government guarantee of the security deposit and initial monthly payment.  Thus, the Court agrees with the Defendants that the inclusion of these allegations in the Amended Complaint constituted sanctionable conduct under Rule 11(b)(3).

Having determined that Plaintiffs' counsel violated Rule 11(b)(3), the Court must now determine whether to impose sanctions.  "Once a court determines that Rule 11(b) has been violated, it may in its discretion impose sanctions limited to what is 'sufficient to deter repetition of such conduct.'"  Margo v. Weiss, 213 F.3d 55, 64 (2d Cir. 2000) (quoting Fed. R. Civ. P. 11(c)(2)); Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004) ("Even if the district court concludes that the [submission of a paper] violates Rule 11, however, the decision whether or not to impose sanctions is a matter for the court's discretion.").  "To say that the court has discretion, however, is merely to say that the court has a choice, not that it may exercise the choice without resort to reason; discretion, in other words, is not whim."  Milani v. International Business Machines Corp., Inc., No. 02-CV-3346, 2004 WL 3068451, at *2 (S.D.N.Y. Dec. 30, 2004).

Here, the Defendants seek sanctions on two grounds, only one of which the Court finds to be meritorious.  Specifically, the Court agreed that the Plaintiffs' counsel violated Rule 11 by filing an Amended Complaint that violated the Court's order in Johnson I.  However, the Defendants also failed to comply with the Court's rulings in Johnson I.  As previously noted, in support of their motion to dismiss, the Defendants rely heavily on the deposition transcripts of Ennis and Sharon Johnson from the Defamation Action.  The Court dedicated a considerable amount of time in Johnson I to explaining why the consideration of these documents on a motion to dismiss was not only improper, but constituted reversible error.  Nevertheless, the Defendants

reasserted their argument that the Court could properly consider these documents, without any new authority or attempt to distinguish the cases cited by the Court in <u>Johnson I</u>.

Although it was the Plaintiffs' action in filing a deficient Amended Complaint that necessitated further motion practice, the Court finds that there has been no showing of bad faith on the part of the Plaintiffs' counsel.  Thus, the Court denies the Defendants' motion for sanctions at this time.  However, the Plaintiffs' counsel is advised that future submissions to this Court containing allegations that are merely repetitive and lack factual support or that fail to comply with the Court's orders may be grounds for sanctions under Rule 11.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) is granted, and it is further

**ORDERED**, that the Plaintiffs' are afforded twenty days from the date of this order to serve a second amended complaint with respect to their housing discrimination claims on the basis of the denial of the rental contract, and it is further

**ORDERED**, that the Defendants' motion for sanctions pursuant to Rule 11 is denied.

**SO ORDERED.**
Dated: Central Islip, New York
August 17, 2012

_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge

22